# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ROOSEVELT SCOTT, an individual; | |
| Plaintiff, | 8:17CV361 |
| vs. | MEMORANDUM AND ORDER |
| CONCRETE SUPPLY, INC., an Iowa corporation doing business in Nebraska; | |
| Defendant. | |

This matter is before the Court on the Motion to Dismiss, ECF No. 4, filed by Defendant Concrete Supply, Inc. For the reasons stated below, the Motion will be granted.

## BACKGROUND

The following facts are those alleged in the Complaint, ECF No. 1, and are assumed true for purposes of the Motion to Dismiss.

Plaintiff Roosevelt Scott, an African-American man, was hired as a truck driver for Concrete Supply, Inc., on March 7, 2014. In September 2015, Scott "was injured on his way to work and was unable to work until October 2015." Comp. ¶ 2, ECF No. 1, Page ID 1. Without indicating the nature of the injury, Scott's Complaint alleges he "provided Concrete Supply with medical documentation and requested light duty." *Id.* Concrete Supply continued to have Scott perform his regular truck driving duties.

When Scott returned to work in October 2015, he also requested a schedule that would accommodate his 5:00 p.m. physical therapy appointments. Scott alleges Concrete Supply refused to grant him that accommodation, but "accommodated David

Miller's request for light duty when he cut his finger." Comp. ¶4, ECF No. 1, Page ID 2. David Miller is Caucasian. Scott further alleges he was required to work on Saturdays while other Caucasian employees with less seniority were not.

Scott complained about the foregoing treatment to his immediate supervisor, Chris Rogers, on or around October 26, 2015. He also complained to the shop supervisor, Brian Hensley, and the dispatch manager, Marty Miles. In early 2016, Scott found out his 2015 annual bonus was $1,200 less than his 2014 annual bonus, which Hensley explained was "due to [Scott's] injury." Comp. ¶8, ECF No. 1, Page ID 2. One of Scott's co-workers also told a racially offensive joke, which was not addressed by management.

On or around April 8, 2016, Scott provided Concrete Supply with notice that he would be terminating his employment in two weeks. Scott alleges he was not permitted to work during that two-week period, but that another Caucasian employee was allowed to do so after giving his two-week notice. Scott filed his Complaint on September 27, 2017, and asserted claims for race discrimination, disability discrimination, hostile work environment, and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, the Americans with Disabilities Act, 42 U.S.C. § 12112, and the Nebraska Fair Employment Practices Act, Neb. Rev. Stat. § 48-1104. Concrete Supply filed its Motion to Dismiss requesting that the Court dismiss the Complaint or, in the alternative, require Scott to file a more definite statement of his claims.

**STANDARD OF REVIEW**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy this requirement, a

plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Corrado v. Life Inv'rs Ins. Co. of Am.*, 804 F.3d 915, 917 (8th Cir. 2015) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678), *cert. denied*, 135 S. Ct. 2941 (2015). The complaint's factual allegations must be "sufficient to 'raise a right to relief above the speculative level.'" *McDonough v. Anoka Cty.*, 799 F.3d 931, 946 (8th Cir. 2015) (quoting *Twombly*, 550 U.S. at 555). The Court must accept factual allegations as true, but it is not required to accept any "legal conclusion couched as a factual allegation." *Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 373 (8th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678). Thus, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ash v. Anderson Merchandisers, LLC*, 799 F.3d 957, 960 (8th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678), *cert. denied*, 136 S. Ct. 804 (2016).

On a motion to dismiss, courts must rule "on the assumption that all the allegations in the complaint are true," and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 555 & 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "Determining whether a complaint

states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Mickelson v. Cty. of Ramsey*, 823 F.3d 918, 923 (8th Cir. 2016) (alternation in original) (quoting *Iqbal*, 556 U.S. at 679).

## DISCUSSION

The Court will dismiss Scott's Complaint because it failed to allege he exhausted his administrative remedies with respect to his Title VII and ADA claims. It further failed to allege a disability within the meaning of the ADA and the NFEPA, and it failed to state a plausible claim for race-based hostile work environment. The Court will also grant Scott's request to file an amended complaint.

### I. Failure to Exhaust Administrative Remedies

**A. Discrimination and Hostile Work Environment Claims Under Title VII and the ADA**

A plaintiff must exhaust administrative remedies before asserting claims under Title VII and the ADA. *Randolph v. Rodgers*, 253 F.3d 342, 347 n.8 (8th Cir. 2001) ("Title VII of the Civil Rights Act of 1964 and Title I of the ADA both require exhaustion of administrative remedies[.]"); *see also Cottrill v. MFA, Inc.*, 443 F.3d 629, 634-35 (8th Cir. 2006); 42 U.S.C. § 12117(a). "'Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice' that must be individually addressed before the EEOC." *Sellers v. Deere & Co.*, 791 F.3d 938, 943 (8th Cir. 2015) (quoting *Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 851 (8th Cir. 2012). Although courts in the Eighth Circuit must "liberally construe an administrative charge for exhaustion of remedies purposes, . . . 'there is a difference

4

between liberally reading a claim which lacks specificity, and inventing, *ex nihilo*, a claim which simply was not made.'" *Id.* (quoting *Parisi v. Boeing Co.*, 400 F.3d 583, 585-86 (8th Cir. 2005). Thus, "[t]he claims of employment discrimination in the complaint may be as broad as the scope of the EEOC investigation which reasonably could be expected to result from the administrative charge." *Wallace v. Interbake Foods, LLC*, 973 F. Supp. 2d 1067, 1075 (2013) (quoting *Parisi*, 400 F.3d at 585).

Scott's Complaint alleges he dual filed a "charge of retaliation" with the Nebraska Equal Opportunity Commission (NEOC) and the United States Equal Employment Opportunity Commission (EEOC), but nothing more. Comp. ¶15, ECF No. 1, Page ID 4. The attached right-to-sue letter is incomplete and does not include a copy of the charges or facts submitted for investigation. *See* 29 C.F.R. 1601.28(e) (a copy of the submitted charges is among the contents of a right-to-sue letter). Thus, there are no allegations that the scope of the administrative investigation included hostile work environment charges under Title VII or discrimination charges under either Title VII or the ADA. Scott has, therefore, failed to allege he exhausted his administrative remedies with respect to his hostile work environment and discrimination claims under Title VII and the ADA. *Dittemore v. Transit Auth. of the City of Omaha*, No. 8:16-CV-23, 2016 WL 3945154, at *4 (D. Neb. July 19, 2016) (explaining "[t]he scope of a civil suit may be as broad as the scope of the administrative investigation . . . but it cannot be broader"); *see Wallin v. Minn. Dep't. of Corr.*, 153 F.3d 681, 688 (8th Cir. 1998) ("[I]t is well established that retaliation claims are not reasonably related to underlying discrimination claims.").

Nor does the Complaint allege whether Scott submitted his charge of retaliation based on statutorily protected activity under Title VII or the ADA. As such, it is unclear whether the scope of the administrative investigation included retaliation under Title VII, the ADA, or both. Therefore, the Court will also dismiss these claims because it is unable to determine whether Scott exhausted his administrative remedies with respect to each.

### B. Claims Under the NFEPA

If a plaintiff's NFEPA claims fall under Neb. Rev. Stat. § 20-148,[1] the plaintiff does not have to exhaust administrative remedies with respect to those claims. *Goolsby v. Anderson*, 549 N.W.2d 153, 158 (Neb. 1996). Although Scott does not explicitly allege he is asserting his NFEPA claims pursuant to § 20-148, he has alleged "the deprivation of [a] right[ ], privilege[ ], or immunity[y] secured by the . . . laws of the State of Nebraska." Neb. Rev. Stat. § 20-148. Thus, his NFEPA claims are not subject to dismissal for failure to exhaust administrative remedies.[2]

## II. Failure to Allege a Disability Under the ADA

---

[1] Section 20-148 provides

> Any person or company, as defined in section 49-801, except any political subdivision, who subjects or causes to be subjected any citizen of this state or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the United States Constitution or the Constitution and laws of the State of Nebraska, shall be liable to such injured person in a civil action or other proper proceeding for redress brought by such injured person.

Neb. Rev. Stat. § 20-148.

[2] The Court will not exercise its supplemental jurisdiction over Scott's Nebraska state law claims if he is unable to state a claim under federal law. *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (quoting 28 U.S.C. § 1367(c)) ("The district courts *may* decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction.") (alterations in original).

Concrete Supply also argues Scott failed to allege a disability within the meaning of the ADA and the NFEPA.

To state a claim for disability discrimination under the ADA, Scott must allege facts showing he "is disabled within the meaning of the ADA[.]" *Hill v. Walker*, 737 F.3d 1209, 1216 (8th Cir. 2013). Under the ADA, "[t]he term 'disability' means . . .

    (A) a physical or mental impairment that substantially limits one or more major life activities of such individual;

    (B) a record of such an impairment; or

    (C) being regarded as having such an impairment . . . ."

42 U.S.C. § 12102(1). "Major life activities are activities such as 'caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Chalfant v. Titan Dist., Inc.*, 475 F.3d 982, 989 (8th Cir. 2007) (quoting 29 C.F.R. § 1630.2(i)). A substantial limitation exists "when the employee is 'significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes.'" *Chalfant*, 475 F.3d at 989 (quoting 29 C.F.R. § 1630.2(j)(3)(i)). "The disability discrimination provisions in the NFEPA are patterned after the ADA, and the statutory definitions of 'disability' and 'qualified individual with a disability' contained in the NFEPA are virtually identical to the definitions of the ADA." *Orr v. Wal-Mart Stores, Inc.*, 297 F.3d 720, 723 (8th Cir. 2002).

Scott has not alleged a disability under 42 U.S.C. § 12102(1)(A), (B), or (C). The Complaint alleges Scott was injured and that he provided Concrete Supply with "medical documentation" of his injury. Comp. ¶2, ECF No. 1, Page ID 1. It also alleges "Concrete Supply possessed Mr. Scott's records, history, medications, and ongoing

medical appointments as establishing that he was, in fact, disabled." *Id.* ¶39, Page ID 10. However, there are no allegations that provide any indication of the nature of Scott's injury, only that Scott was injured and Concrete Supply was provided medical documentation of his injury. Based on these allegations, the Court is unable to determine whether Scott's alleged injury plausibly constitutes "a physical or mental impairment that substantially limits one or more major life activities," 42 U.S.C. § 12102(1)(A), or whether Scott has provided Concrete Supply with a record "*of such an impairment.*" 42 U.S.C. § 12102(1)(B) (emphasis added); *see Chappell v. Butterfield-Odin Sch. Dist. No. 836*, 673 F. Supp. 2d 818, 837 (D. Minn. 2009) (citing 29 C.F.R. § 1630.2(k)) ("[I]t is not enough to have a record of an impairment; instead, a plaintiff must have 'a history of, or . . . been misclassified as having, a mental or physical impairment that *substantially limits one or more major life activities*.'") (emphasis added). Thus, Scott has not alleged an injury under § 12102(1)(A) or (B).

Nor has Scott alleged a disability under § 12102(1)(C). "In order to be regarded as disabled with respect to the major life activity of working, the employer must mistakenly believe that the actual impairment substantially limits the employee's ability to work." *Chalfant*, 475 F.3d at 989. Although Scott alleges his shop manager told him his 2015 bonus was less than his 2014 bonus because of his injury, this allegation does not show Concrete Supply believed Scott suffered from an impairment that substantially limited his ability to work. *See Chalfant*, 475 F.3d at 989 (quoting 29 C.F.R. § 1630.2(j)(3)(i)). Thus, Scott has not alleged an injury under § 12102(1)(C).

Accordingly, with respect to his disability discrimination claim under the ADA and NFEPA, Scott has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Corrado*, 804 F.3d at 917 (quoting *Twombly*, 550 U.S. at 570).

### III. Failure to Plead a Plausible Hostile Work Environment Claim

Concrete Supply also argues Scott's Complaint failed to allege sufficient facts to state a plausible claim for race-based hostile work environment under Title VII.

"Title VII prohibits an employer from subjecting its employees to a hostile work environment because of such individual's race, color, . . . or national origin." *Al-Zubaidy v. TEK Indus., Inc.*, 406 F.3d 1030, 1038 (8th Cir. 2005) (quoting 42 U.S.C. § 2000e-2(a)(1)). "Hostile work environment harassment occurs '[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Banks v. Deere*, 829 F.3d 661, 666 (8th Cir. 2016) (quoting *Jackman v. Fifth Judicial Dist. Dep't of Corr. Servs.*, 728 F.3d 800, 804 (8th Cir. 2015)). To prevail on a hostile work environment claim, a plaintiff must "establish that (1) he is a member of a protected group; (2) he was subject to unwelcome race-based harassment; (3) the harassment was because of membership in the protected group; and (4) the harassment affected a term, condition, or privilege of employment." *Banks*, 829 F.3d at 667 (quoting *Malone v. Ameren UE*, 646 F.3d 512, 517 (8th Cir. 2011)). "The same standard governs claims under . . . [the] NFEPA." *Reyes*, 890 F. Supp. 2d at 1162 (citing *Anderson v. Durham D & M. L.L.C.*, 606 F.3d 513, 518 (8th Cir. 2010)).

Concrete Supply argues the fourth element has not been adequately pled. "In order for harassment to have affected a term, condition, or privilege of employment, the

9

harassment must have been 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Clay v. Credit Bureau Enters., Inc.*, 754 F. 3d 535, 540 (8th Cir. 2014) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). The working environment must be one "that a reasonable person would find hostile." *Clay*, 754 F.3d at 540. Whether a work environment is objectively hostile depends on "all the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance, and whether the conduct unreasonably interfered with the employee's work performance." *Singletary v. Mo. Dep't of Corr.*, 423 F.3d 886, 892-93 (8th Cir. 2005).

Scott's Complaint claims Concrete Supply created a hostile work environment by: scheduling him to work Saturdays instead of other Caucasian employees with less seniority; not punishing an employee for making a race-based joke; only allowing Caucasian employees to operate mixers and loading trucks; refusing to grant him a light duty assignment after his injury; and refusing to schedule him to work after he submitted his two-week notice of termination. However, even when taken as true, these allegations do not support a plausible claim for hostile work environment. *See Jackman*, 728 F.3d at 806 (quoting *Wilkie v. Dep't of Health and Human Servs.*, 638 F.3d 944, 955 (8th Cir. 2011)) ("The standard for demonstrating a hostile work environment under Title VII is 'demanding,' . . . 'and it is not a general civility code for the American workplace.'"); *see also Jackson v. Lew*, 242 F. Supp. 3d 850, 867 (W.D. Mo. 2017) (citing *Blomker v. Jewell*, 831 F.3d 1051, 1057 (8th Cir. 2016)) ("The

threshold for actionable harassment is high, requiring harassment that is so intimidating, offensive, or hostile such that it poisons the work environment.").

Without knowing what Scott's injury was, the Court is unable to determine whether Concrete Supply's refusal to grant him a light duty assignment supports a plausible claim for hostile work environment. Furthermore, giving Scott an undesirable work schedule, refusing to punish a coworker for a racially-offensive joke, and not allowing him to perform other jobs are not so severe that Scott was subjected to an abusive working environment. *See Harris v. Potter*, No. 4:08-CV-1191 CAS, 2009 WL 383588, at *6 (E.D. Mo. Feb. 12, 2009) (citing *Henthorn v. Capitol Commc'ns, Inc.*, 359 F.3d 1021, 1028 (8th Cir. 2004)) (minor changes in work schedule and assignments did not affect a term, condition, or privilege of employment); *Canady v. Wal-Mart Stores, Inc.*, 440 F.3d 1031, 1035 (8th Cir. 2006) ("Mere utterance of an epithet that engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to give rise to a . . . hostile work environment claim.") (internal quotations omitted). Thus, Scott has not pled enough facts to support a plausible prima facie case of race-based hostile work environment under Title VII and the NFEPA.

## CONCLUSION

Scott's Complaint failed to allege he exhausted his administrative remedies with respect to his Title VII and ADA claims. It further failed to allege a disability within the meaning of the ADA and the NFEPA, and it failed to state a plausible claim for race-based hostile work environment under Title VII and the NFEPA. Accordingly, the Court will dismiss Scott's Complaint, without prejudice, and grant Scott's request to file an amended complaint on or before February 22, 2018.

IT IS ORDERED:

1. The Motion to Dismiss, ECF No. 4, filed by Defendant Concrete Supply, Inc., is granted;

2. The Complaint is dismissed, without prejudice; and

3. Plaintiff Roosevelt Scott may file an amended complaint on or before February 22, 2018.

Dated this 15th day of February, 2018.

BY THE COURT:

s/Laurie Smith Camp
Chief United States District Judge